This opinion is uncorrected and subject to revision before
publication in the New York Reports.

No. 25
The People &c.,
            Respondent,
        v.
Benny Garay,
            Appellant.


            Adam J. Berstein, for appellant.
            Patricia Curran, for respondent.


ABDUS-SALAAM, J.:

     On this appeal, defendant asserts three main arguments:

(1) that his right to counsel under the New York Constitution

(art. I, § 6) was violated in connection with the trial court's

- 1 -

replacement of a sick juror with an alternate juror; (2) that the court violated his right to a public trial under the Sixth Amendment of the United States Constitution by failing to consider reasonable alternatives to closure before ordering the courtroom closed during the testimony of two undercover officers; and (3) that the court erred in summarily denying his request for a suppression hearing under CPL § 710.60(3).  We conclude that defendant's right to counsel claim was not preserved for appellate review, and that the remaining claims lack merit.

Defendant Benny Garay was tried for his alleged role in a cocaine drug ring led by his co-defendant Lillian Rivera.  They were jointly tried.  Garay was charged with conspiracy in the second degree (Penal Law § 105.15); criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]); criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]); and criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06 [1]).

Several weeks after the trial had begun, the trial court began the session by acknowledging that defendant Garay's trial counsel, Mr. Conway, was not present.  The court then referenced an off-the-record discussion that was held that morning with both counsel, as well as an off-the-record ex parte communication the court had with a sick juror.  The court stated that it had spoken with all the lawyers, including defendant's counsel, and had

advised them that one of the jurors had called in sick, and that the juror had stated that "in no way" could he make it to court that day, even if the trial were adjourned until the afternoon. The judge stated that he was going to replace the sick juror with the next alternate juror. Co-defendant Rivera's lawyer objected to replacing the sick juror with an alternate and stated that he had conferred with defendant's lawyer and that he "believe[d]" defendant's counsel "is agreeing" to the objection as well. Rivera's counsel suggested that the court postpone the trial for one day in the hope that the sick juror might return, and he also complained that discharging the sick juror would leave only one remaining alternate juror. He noted that the court had previously excused an alternate juror for psychological reasons and he had not objected, but that he was objecting to excusing this second juror. He argued that there were not many minorities on the jury, and that one of two black jurors would now be replaced by a white juror.

The judge explained that the trial was already going beyond the time that he had estimated for the jury, that he was concerned about losing more jurors, and concluded that the sick juror would be replaced. The court then directed that the jurors be brought in, to which co-defendant's counsel inquired, "Judge, are we waiting for [Garay's counsel]?" The record shows that right after this inquiry, counsel entered the courtroom, and thereafter the jury entered. After the jurors were seated, the

court told an alternate juror: "You're going to take that seat right over there, number ten. That will be your seat for the rest of the trial." Defense counsel made no comment or objection. The People then called their next witness and the trial proceeded.

Garay was acquitted of every charge except for criminal possession in the fifth degree. He was sentenced to time served, having been incarcerated for 26 months.[1] The Appellate Division affirmed (107 AD3d 580 [2013]), and a Judge of this Court granted him leave to appeal (22 NY3d 1040 [2013]).

We agree with the Appellate Division that defendant failed to preserve his claim that he was deprived of his right to counsel when the court replaced the sick juror with an alternate juror.

> "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same" (CPL 470.05[2]).

The court's replacement of the sick juror in the presence of defense counsel was not a mode of proceedings error which "provides an exception to traditional preservation rules" (People

---

[1] His co-defendant Rivera was convicted of conspiracy in the second degree, five counts of criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the first degree. She was sentenced to an aggregate prison term of 20 years with five years of post release supervision.

v Gray, 86 NY2d 10, 21 [1995]).

This Court has applied the common sense principle that if defense counsel is present to bring an error to the trial court's attention, counsel must register a protest where the error, if called to the court's attention, "would afford the trial court opportunity promptly to rescind any directive violative of the defendant's right of access to counsel or otherwise to cure the error" (People v Narayan, 54 NY2d 106, 112 [1981]).  We reaffirmed that principle in People v Umali (10 NY3d 417, [2008]).  Both Narayan and Umali concerned a court's restriction on defense counsel's right to confer with defendant in the course of the trial.  In Narayan, the court had imposed a ban on defense counsel speaking with defendant concerning defendant's testimony in the course of cross-examination.  Umali involved a ban on discussing testimony during a four-day recess.  We held that in order to preserve a claim involving a right to counsel for appellate review, counsel was required to timely protest the ruling.

Here, although defense counsel was not present in court while the judge was stating on the record that he intended to replace the sick juror and counsel for co-defendant was objecting to that replacement, the record shows that prior to arriving in the courtroom, counsel was aware from his discussion with the court that there was a sick juror and that the court had previously excused an alternate juror for psychological reasons.

Most importantly, defense counsel was in the courtroom when the judge told the alternate to take the seat of the sick juror. If counsel had any objection to the replacement of the juror, including a desire to be heard further on the issue, he had the time and the opportunity to make his position known. It was incumbent upon him to raise an objection at that time, before the trial proceeded. Certainly, the better practice would have been for the trial judge to await counsel's arrival before placing his decision regarding the juror on the record. While, as the dissent notes, defense counsel was absent during the on-the-record discussion about dismissing the juror, nonetheless, counsel was present at the critical time when the sick juror was being replaced by the alternate, and counsel did not raise any objection concerning the right to counsel or otherwise, at a time when the trial court had the opportunity to change course. Thus, the preservation rule that we applied in Narayan and Umali applies in this instance.

The Appellate Division correctly distinguished this situation from the facts of People v Strothers (87 AD3d 431 [1st Dept 2011]), where the court commenced a suppression hearing in the absence of defense counsel, who arrived halfway through the testimony of a witness. In Strothers, because counsel was not present when the deprivation occurred and thus could not lodge an objection, the court rejected the People's argument that counsel had been required to preserve his claim that defendant had been

deprived of the right to counsel (id. at 433; see also People v Margan, 157 AD2d 64 [1st Dept 1990][where trial judge directed the prosecutor to begin direct examination of witness in the absence of defense counsel, the error did not occur in the presence of counsel, and thus the holding of Narayan is not controlling]).

In sum, defense counsel's failure to object when the court replaced the sick juror renders defendant's claim of deprivation of the right to counsel unpreserved and thus beyond our review (see People v Medina, 18 NY3d 98, 104 [2011]; People v Gray, 86 NY2d10, 19 [1995]).

Regarding the closing of the courtroom, the court conducted a Hinton[2] hearing prior to trial at which two undercover officers testified in detail as to their activities working undercover, their safety concerns about testifying in an open courtroom and their belief that testifying in an open courtroom would compromise their effectiveness as active undercover officers. After the testimony, the prosecutor requested that the courtroom be closed for the testimony of the officers. Defendant opposed the closing of the courtroom, and asked that his family be allowed to attend in any event. At the close of the hearing, the court found that both officers were "clearly active undercovers,"

---

[2]People v Hinton (31 NY2d 71, 75-76 [1972][while trial court has inherent discretionary power to close the courtroom, that discretion is "to be sparingly exercised and then, only when unusual circumstances necessitate it."])

that they both had open undercover cases and had been threatened during the course of their undercover work, and that they both took precautions to protect their identities when they came to court, such as using a side entrance to the courthouse.

The court concluded that the People had met their burden on closing the courtroom for the testimony of the officers, but had not met their burden on the exclusion of family members or significant others. It ordered a partial courtroom closure, allowing defendants' family members to attend all aspects of the trial, including the testimony of the undercover officers, provided defendants gave a list of the names of family members who were expected to attend, and their relationship to defendants. At trial, immediately preceding the testimony of one of the undercover officers and the sealing of the courtroom, the judge said that he "gather[ed]" by defendants' "silence" that there was nobody there from their families attending that day, and stated that if a family member were to arrive, "[j]ust let [the court] know. We'll let them in."

On appeal, defendant does not challenge the adequacy of the People's showing in support of the closure. Rather, he argues that his Sixth Amendment right to a public trial was violated because, he asserts, the trial court did not consider "reasonable alternatives" to closing the courtroom, which is one of the four prongs comprising the standard for courtroom closure set out by the United States Supreme Court in Waller v Georgia

(467 US 39, 48 [1984]).  The <u>Waller</u> Court held:

> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure"(467 US at 448).

Defendant points out that the trial court did not articulate any specific findings reflecting its consideration of alternatives. He relies on <u>Presley v Georgia</u> (558 US 209 [2010]), which held that "trial courts are required to consider alternatives to closure even when they are not offered by the parties"(<u>id</u>. at 214) and that trial courts must make findings "specific enough that a reviewing court can determine whether the closure order was properly entered"(<u>id</u>. at 214-215, quoting <u>Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.,</u> 478 US 501, 510 [1986]).

However, as defendant recognizes, this Court has rejected the argument that United States Supreme Court precedent requires a trial court to explain, on the record, the alternatives to closure that it considered (<u>People v Echevarria</u>, 21 NY3d 1, 18 [2013]; <u>People v Ramos</u>, 90 NY2d 490, 504 [1997]).  Rather, we have concluded that where the record establishes, as it does here, the need to close a portion of the proceedings, "it can be implied that the trial court, in ordering closure, determined that no lesser alternative would protect the articulated interest"(<u>Echevarria</u>, 21 NY3d at 10, quoting <u>Ramos</u>, 90 NY2d at

504).  We reject defendant's argument that <u>Echevarria</u> is irreconcilable with Supreme Court precedent and that it sets forth an unworkable standard, and we decline defendant's suggestion that we overrule our precedent.

Finally, we agree with the Appellate Division that the trial court properly denied defendant's request for a hearing based on his motion to suppress physical evidence.  The police, who were conducting an investigation of a large-scale cocaine selling operation, had identified Rivera as the head of the organization and defendant as her driver.  On March 7, 2008, the police heard, through a wiretap on Rivera's phone, a conversation she had with Garay where she asked Garay to pick her up at her house.  Garay drove Rivera from the Bronx to Manhattan, where she allegedly purchased a kilogram of cocaine.  After they returned to Rivera's house, he went inside her apartment and then returned to the car and drove off.  The police stopped Garay's car, arrested him and searched him.  After he was placed in a police van, Garay was searched again and cocaine was found in his pants pocket.

Garay was initially charged in a criminal complaint alleging that he engaged in a drug selling conspiracy involving Rivera and others.  The complaint alleged that Garay drove Rivera on March 7, 2008, that when he was stopped by police he displayed a New York City Police Department identification card and that the police recovered a "quantity of cocaine" from his pants pocket.

At the arraignment, the prosecutor further alleged that Garay was Rivera's driver and had a number of cars registered to his name which had been associated with Rivera.  She also alleged that when Garay was arrested, he had cocaine that appeared to have been cut from a kilogram that was found in Rivera's apartment.  The indictment charged defendant, along with Rivera and others, with overt acts in furtherance of a conspiracy to sell cocaine.  The indictment was consistent with the allegations of the criminal complaint and the allegations made at arraignment.

Defendant's motion for suppression was supported by an affirmation by defense counsel which stated that defendant did not consent to a search of his vehicle or his person, that he was not committing a crime at the time he was detained, that he was not engaged in any criminal conduct, and that no contraband was in plain view.  Counsel also stated that defendant was stopped "pursuant to dropping off a family member," and that the police did not have probable cause to search defendant.  The People, citing CPL § 710.60(1), opposed the motion on the ground that it did not contain sworn allegations of fact necessary to warrant a hearing.  On appeal, Garay argues that the People's allegations against him were sparse and unspecific, and that given these deficiencies, defendant sufficiently challenged the allegations of probable cause to arrest him by asserting that he was stopped after dropping off a family member, was not engaged in any criminal conduct and had no contraband in plain view.

Defendant's allegations failed to raise a legal basis for suppression. CPL § 710.60(1) provides that a motion to suppress made before trial must state the ground of the motion and contain sworn allegations of fact supporting such grounds. The court may summarily deny the motion if "[t]he motion papers do not allege a ground constituting legal basis for the motion," or, with two exceptions not relevant here, "[t]he sworn allegations of fact do not as a matter of law support the ground alleged."

As we held in People v Mendoza (82 NY2d 415 [1993]), the factual sufficiency of a suppression motion "should be determined with reference to the face of the pleading, the context of the motion, and defendant's access to information" (id. at 422). We agree with the People that in this context, defendant's simple denial that he was not engaged in any criminal conduct at the time he was stopped did not raise any issue of fact requiring a hearing. It was defendant's role in the conspiracy as Rivera's driver and his conduct in transporting her at the time of the purchase of the kilogram of cocaine that provided probable cause to arrest him. Under those circumstances, it was incumbent upon defendant to refute the allegations in order to obtain a hearing.

Here, as in the context of a buy and bust situation, factual allegations of innocent conduct at the time of the arrest do not mandate a hearing because in the typical buy and bust situation, probable cause is "generated by the drug transaction," and therefore, "an allegation that defendant was merely standing on

the street at the time of the arrest does not frame a factual issue for the court's determination" (<u>People v Jones</u> 95 NY2d 721, 726 [2001], quoting <u>Mendoza</u>, 82 NY2d at 428).  Thus, defendant's claim of innocent conduct at the time of the arrest, in the face of allegations that he was part of a drug dealing conspiracy, was insufficient to establish entitlement to a hearing.

Accordingly, the order of the Appellate Division should be affirmed.

People v Benny Garay

No. 25

LIPPMAN, Chief Judge (dissenting):

Because this Court does not require preservation for violations of the right to counsel where counsel is absent during crucial parts of proceedings, I would reach the merits of defendant's constitutional claim. Thereupon, I would hold that defendant's right to counsel was violated when the court decided to dismiss a juror in defense counsel's absence.

As this Court has repeatedly held, "a claimed deprivation of the State constitutional right to counsel may be raised on appeal, notwithstanding that the issue was not preserved" (People v Kinchen, 60 NY2d 772, 773 [1983]; see People v McLean, 15 NY3d 117, 120 [2010] ["right to counsel claims are excepted from the general rule that unpreserved issues cannot be reviewed on appeal"]; see People v Ahmed, 66 NY2d 307, 310 [1985] [violation of right to counsel constitutes "mode of proceedings error" and does not require preservation]). In People v Grant (91 NY2d 989 [1998]), this Court permitted a defendant to raise a right to counsel claim that had not been raised in the lower courts, "follow[ing] the settled rule that a claim of deprivation of the fundamental right of counsel may be raised on appeal

though not specifically preserved below" (Arthur Karger, Powers of the New York Court of Appeals § 21:11 at 779, n 19 [3d ed rev 2005]).

As is made clear from the record, the court had twice decided to excuse the sick juror outside the presence of defense counsel, hearing arguments against dismissal, and supplying reasoning justifying the dismissal. After making its decision to replace the sick juror, the court stated: "I wish we [could] replace [Garay's counsel]. Unfortunately we can't." Garay's counsel entered moments later, after all but the finishing touches had been completed in his absence. The majority assumes defense counsel was aware of everything taking place in his absence, but that is unwarranted on this record. While acknowledging that "[c]ertainly, the better practice would have been for the trial judge to await counsel's arrival before placing his decision regarding the juror on the record," the majority maintains that defense "counsel was present at the critical time when the sick juror was being replaced by the alternate, and counsel did not raise any objection concerning the right to counsel or otherwise, at a time when the trial court had the opportunity to change course" (majority op., at 6).

Despite the cases to the contrary, the majority points to two cases in which this Court held that a right-to-counsel claim must be preserved (see People v Narayan, 54 NY2d 106, 112 [1981]; People v Umali, 10 NY3d 417, 423 [2008]). In both

Narayan and Umali, the court denied defendant the right to confer
with defense counsel during trial, and we held that the
defendants' right to counsel claims were unpreserved to the
extent that counsel did not object.  However, those cases are
distinguishable because, there, trial counsel was "presen[t]
. . . at the time of the trespass on defendant's right to his
assistance" (Narayan, 54 NY2d at 112; see Umali, 10 NY3d at 423).
The majority overlooks this crucial distinction and apparently
assumes that the court's decision to dismiss the juror -- made in
defense counsel's absence -- was a revocable decision and thus
unreviewable, a determination that cannot be drawn from these
cases (see majority op., at 6).  Significantly, the relevant
"critical time" at which defendant was deprived of his right to
counsel was not, as the majority posits, when the sick juror was
actually replaced by the alternate, but, at the very least, when
the court made its decision to dismiss the juror.  This is
reflected in CPL 270.35 (2) (b), which provides that "[t]he court
shall afford the parties an opportunity to be heard before
discharging a juror."

The majority also concludes that the Appellate Division
correctly distinguished the circumstances here from the facts of
People v Strothers (87 AD3d 431 [1st Dept 2011]).  In Strothers,
defense counsel arrived halfway through the proceeding, but the
court held that counsel could not lodge an objection while
absent, and thus preservation was not required (see 87 AD3d at

433).  The deprivation of counsel in Strothers occurred at the
commencement of the proceeding, with defense counsel arriving
halfway through, and here, it occurred when the court made its
decision to dismiss the juror (majority op., at 6 [citing 87 AD3d
at 433]).  Here, the arguments against dismissal of the juror had
been heard and rejected, and the issue decided with the only task
remaining being the seating of the alternate juror.  Defense
counsel was absent during the entire period and very possibly was
unaware of the proceedings taking place without him.

In People v Margan, where the trial judge ordered the
prosecutor to begin direct examination of a witness in the
absence of defense counsel, the Appellate Division correctly
followed "the general rule that a violation of the right to
counsel may be raised, as a question of law, for [the] first time
on appeal" (157 AD2d 64, 70 [2d Dept 1990]).  The important
distinction is that in Strothers, Margan, and here, defense
counsel was absent from the courtroom during the proceeding, but
was present in Narayan and Umali.

Affirming the judgment "on preservation grounds will
only encourage prosecutors in their already well-established
tendency to pounce on every arguable imperfection in a defense
lawyer's argument as a barrier to deciding a case on the merits"
(People v Beasley, 16 NY3d 289, 293 [2011] [Smith, J.,
concurring]).

I would hold that preservation is not required here,

and upon reaching the merits, I would conclude that defendant's right to counsel was violated.

"This [C]ourt has consistently exercised the highest degree of vigilance in safeguarding the right of an accused to have the assistance of an attorney at every stage of the legal proceedings against him" (People v Cunningham, 49 NY2d 203, 207 [1980]).  "[S]ince most constitutional rights are not self-executing, the right to counsel may be the most basic of all" (People v Hodge, 53 NY2d 313, 317 [1981]).  Criminal Procedure Law § 270.35(2)(b) states that "[t]he court shall afford the parties an opportunity to be heard before discharging a juror."  A court has discretion to replace an absent juror "if the court determines that there is no reasonable likelihood such juror will be appearing . . . in court within two hours of the time set by the court for the trial to resume" (CPL 270.35 [2]), but it cannot do so absent defense counsel.

In Hodge, the trial court insisted that the defendant proceed with a preindictment preliminary hearing despite defense counsel's absence (see 53 NY2d at 316-317).  The People asserted that because the defendant was subsequently indicted, there was no harm and "any infirmities that occurred at the flawed hearing may be excused" (id. at 319).  We held there that "the test must be not what the hearing did not produce, but what it might have produced if the defendant's right to counsel had not been ignored" (id. at 321).  "[T]he result of such inquiry would have

to be pure speculation" (id.).

        In People v Johnson (189 AD2d 318 [4th Dept 1993]),
reversal was "mandated" where a trial court discharged a sworn
juror prior to the impanelment of the entire jury "in the absence
of defense counsel" (id. at 320).  Because "[j]ury selection is a
critical stage of a criminal proceeding," "the unique,
indispensable presence of at least the 'single-minded counsel for
the accused' is minimally necessary to safeguard" the defendant's
"constitutional right to a particular jury chosen according to
law, in whose selection he has had a voice" (id. [quotation marks
and citations omitted]).

        The denial of the right to counsel at trial "is of
constitutional dimension" and is not subject to harmless error
analysis (Hodge, 53 NY2d at 320; People v Hilliard, 73 NY2d 584,
587 [1989]).  As this Court recognized, "[t]he right to have the
assistance of counsel is too fundamental and absolute to allow
courts to indulge in nice calculations as to the amount of
prejudice arising from its denial" (see People v Felder, 47 NY2d
287, 296 [1979]; see also Perry v Leeke, 488 US 272 [1989]).

        Here, the court's decision to replace the ill juror
must be made while defense counsel is present.  Indeed, the
statute directs that counsel "shall" be afforded an opportunity
to object (see 270.35 [2][b]).  Further, trial courts should not
disregard this Court's long history of safeguarding the right to
counsel (Hodge, 53 NY2d at 317).  As it was in Hodge, it is

inappropriately speculative here to assert that the juror would have been discharged even if counsel had been present (see Hodge, 53 NY2d at 320; Felder, 47 NY2d at 296).

For these reasons, I would reverse the Appellate Division and remit for a new trial.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Abdus-Salaam.  Judges Read, Pigott and Rivera concur.  Chief Judge Lippman dissents in an opinion in which Judges Stein and Fahey concur.

Decided March 31, 2015